```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

| | |
|---|---|
| PAUL SIMONS,<br><br>                Plaintiff,<br><br>     v.<br><br>DITTO TRADE, INC., DITTO HOLDINGS, INC., and JOSEPH FOX,<br><br>                Defendants. | Case No. 14 C 309<br><br>Judge Harry D. Leinenweber |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Plaintiff Paul Simons' Motion to Dismiss Defendants' Amended Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6), and to Strike Portions of the Counterclaims pursuant to Fed. R. Civ. P. 12(f) [ECF No. 60]. For the reasons stated herein, the Motion to Dismiss is granted in part and denied in part, and the Motion to Strike is granted.

### I. BACKGROUND

Simons is the former CEO of Ditto Trade, Inc. ("DT") and a former Director and Executive Vice President of Ditto Holdings, Inc. ("DH"), a subsidiary of DT (collectively, "Ditto"). This action arose when Simons was terminated from his positions with DT and DH after expressing concerns that DH's CEO, Joseph Fox ("Fox"), had engaged in fraud and improper stock transactions.

The allegations of Defendants' Amended Counterclaims are briefly summarized below. According to Defendants, Simons' whistleblowing efforts were not motivated by ethical considerations — to the contrary, "Simons embarked upon a reckless and destructive path" to undermine Ditto when he learned that his employment was about to be terminated. (Defs.' Am. Counterclaims, ECF No. 54, ¶ 26.) Defendants state that Simons was not qualified to carry out his duties as CEO because he never took his Series 24 exam (which qualifies an individual as a general securities principal), as Defendants claim he was required to do under the terms of his Employment Agreement.

Defendants state that although Simons was unable to work collegially with most of Ditto's management, he developed an "extraordinarily close" relationship with Ditto's interim CFO, Jeremy Mann ("Mann"). (*Id.* ¶ 17.) The two quickly became "full-fledged confederates in their plan to benefit themselves at the expense of [DH] and its shareholders." (*Id.* ¶ 19.)

On September 9, 2013, after learning of his forthcoming termination from Mann, Simons sent a letter to DH's senior officers demanding an independent investigation of Fox's alleged wrongful conduct (the "Board Demand Letter") and listing certain expenditures and transactions "that may have personally benefitted Joe Fox." (Ex. C to Defs.' Am. Counterclaims, ECF No. 54-1.) Hours later, Simons directed his attorney, Paul Huey-Burns ("Huey-

Burns"), to report Fox's conduct to the Securities and Exchange Commission (the "SEC").  Huey-Burns sent an email to SEC attorneys that same day (the "Huey-Burns E-Mail"), attaching the Board Demand Letter to it.  On September 10, 2013, Simons was terminated from his position with DT.  The following day, Simons sent a letter to Ditto's investors and shareholders announcing his suspicions (the "Shareholder Letter").  (*Id.* ¶ 35.)  The Shareholder Letter closed with the following statement:  "To be clear, I have not asserted, nor am I asserting through this notification, any allegations of conclusive wrongdoing; the facts and circumstances of which I became aware, with credible documentation, were of a nature serious to request an independent examination and presentation of findings."  (Ex. E to Defs.' Am. Counterclaims, ECF No. 54-1.)

Simons filed his fourteen-count Complaint against Defendants on January 16, 2014 [ECF No. 1].  Defendants counterclaimed for breach of fiduciary duty, breach of confidentiality agreement, breach of employment agreement, tortious interference with prospective economic advantage, and defamation [ECF No. 12.]  On August 8, 2014, the Court dismissed five of Simons' claims and all but the tortious interference counterclaim [ECF. No 37].

On January 15, 2015, Defendants filed Amended Counterclaims [ECF No. 54] again for breach of fiduciary duty (Count I), breach of employment agreement (Count II), tortious interference with

prospective economic advantage (Count III), and defamation (Count IV).

## II. ANALYSIS

### A. Motion to Dismiss

Simons seeks to dismiss Counts I, II, and IV of the Amended Counterclaims pursuant to Rule 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Hallinan v. Fraternal Order of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009), or counterclaim, *AEL Fin. LLC v. Tri-City Auto Salvage, Inc.,* No. 08-CV-4384, 2009 WL 3011211, at *6 (N.D. Ill. Aug. 31, 2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint or counterclaim must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In assessing a counterclaim, a court must accept all well pleaded facts as true, and view them in the light most favorable to the counterclaimant. *See, Active Disposal, Inc. v. City of Darien,* 635 F.3d 883, 886 (7th Cir. 2011). However, a court need not accept as true "legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alterations omitted).

### *1. Count I – Breach of Fiduciary Duty*

In Count I, Defendants allege that Simons breached his fiduciary duties of care, loyalty, and good faith when he (1) disseminated the Shareholder Letter, and (2) authorized the Huey-Burns E-Mail. The Court first turns its attention to the dissemination of the Shareholder Letter. Relying on the Delaware Supreme Court case of *Malone v. Brincat,* Simons argues that Defendants have failed to allege a breach of fiduciary duty claim because "only 'directors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty.'" (Pl.'s Mem., ECF No. 62, at 5 (quoting *Malone,* 722 A.2d 5, 9 (Del. 1998).)

*Malone* and its progeny deal with a situation identical to the one at hand – a director's disclosure of information to shareholders unconnected "to a specific request for the stockholders to make a discretionary voting or tendering decision." *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.2d 121, 157 (Del. Ch. 2004). In this context, violation of a director's fiduciary duties requires the knowing dissemination of false information. *See, id.* at 157–58 (citing *Malone,* 722 A.2d at 9); *see also, Kolber v. Body Cent. Corp.,* 967 F.Supp.2d 1061, 1068 (D. Del. 2013), ("[T]he Delaware Supreme Court held that a corporate fiduciary may only be held liable for

breach of a fiduciary duty for an omission or misleading disclosure in such instance if the corporate fiduciary 'knowingly disseminate[s] false information.'") (quoting *Malone,* 722 A.2d at 9).

Although Defendants argue that the Shareholder Letter constitutes a "false and misleading disclosure," (Defs.' Opp., ECF No. 70, at 6), it suffers from the same defect the Court identified in its previous order: "The problem with Count I is that the communication to the shareholders contains no false information, willful or not. It merely states as a director Simons uncovered questionable information and requested an independent audit. This is hardly a violation of fiduciary duty." (ECF No. 37, at 9.) To reiterate this point, the Court notes the following language from the letter: "Recently I became aware of information and circumstances which raised serious questions and concerns," "I [requested] . . . an independent audit and investigation in order to determine whether or not this information evidenced any impropriety," "I have not asserted, nor am I asserting through this notification, any allegations of conclusive wrongdoing." (Ex. E to Defs.' Am. Counterclaims, ECF No. 54-1.) The Court again concludes that the transmission of the Shareholder Letter did not constitute the knowing disclosure of false information. Defendants have failed to state a claim for breach of fiduciary duty on this basis.

The Court now turns to two documents that were not at issue in Defendants' previous counterclaims: the Huey-Burns E-Mail and the Board Demand Letter attached to it. Like the Shareholder Letter, the Court finds that these documents "merely state[] that as a director Simons uncovered questionable information and requested an independent audit." (ECF No. 37, at 9.) For instance, Huey-Burns states: "[Simons'] allegations are substantive and well-documented and, I believe, raise serious questions as to whether Mr. Fox and certain others involved in senior management have perpetrated or are in the process of perpetrating a fraud. . . ." (Ex. D to Defs.' Am. Counterclaims, ECF No. 54-1.) The Board Demand Letter uses similarly cautious wording. Defendants do not dispute that the transactions described in the letter actually took place, but instead insist that they were "all legitimate business expenses." (Am. Counterclaims, ECF No. 54, ¶ 43.) Given the language of the documents, the Court concludes that their dissemination to the SEC did not constitute the knowing disclosure of false information.

Although the Amended Counterclaims allege that "Simons breached his fiduciary duties by knowingly disseminating false accusations about Fox" (*id.* ¶ 57), Defendants alternatively urge the Court to find that Simons failed to exercise due care in authorizing the Huey-Burns E-Mail (*see,* Defs.' Opp., ECF No. 70, at 8). Under the business judgment rule, corporate directors are

presumed to make decisions "on an informed basis, in good faith, and with the honest belief that the course taken was in the best interest of the corporation." *F.D.I.C. ex rel. Wheatland Bank v. Spangler,* 836 F.Supp.2d 778, 791 (N.D. Ill. 2011) (citation and internal quotations omitted). This presumption can be overcome by allegations that a director acted "fraudulently, illegally, or without becoming sufficiently informed to make an independent business decision." *Id.* at 791-92 (citation and internal quotations omitted). Although the business judgment rule is predicated upon concepts of gross negligence, *see, In re Citigroup Inc. S'holder Derivative Litig.,* 964 A.2d 106, 124 (Del. Ch. 2009), "the totality of the complaint's allegations need only support a reasonable doubt of business judgment protection, not a judicial finding that the directors' actions are not protected by the business judgment rule." *Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson,* 727 F.3d 719, 726 (7th Cir. 2013) (citation, internal quotations, and alterations omitted).

Mindful of this precaution, the Court cannot conclude that Defendants have alleged sufficient facts to overcome the protection of the business judgment rule. The cautiously worded Huey-Burns E-Mail speaks for itself, and does not cast "reasonable doubt" on Simons' business judgment. The e-mail notified the SEC that certain transactions and practices appeared suspicious to Simons, and that Simons had alerted the Board to them. Although

Defendants claim that Simons contacted the SEC in anticipatory retaliation for his impending termination, Defendants have not alleged that Simons acted fraudulently, illegally, or without sufficient information in contacting the SEC — indeed, the e-mail makes clear that Simons was in the process of seeking additional information, and the letter states he had not yet "reached any conclusions." Count I is therefore dismissed.

### 2. *Count II – Breach of Contract*

Defendants allege that Simons was "contractually obligated to obtain a Series 24 license" pursuant to his "Employment Letter and subsequent agreement," and that he breached his contractual obligations when he refused to do so. (Defs.' Am. Counterclaims, ECF No. 54, ¶ 62.) Under Simons' Employment Agreement, a letter dated December 18, 2012, Simons agreed to "maintain [his] current brokerage industry licenses and . . . obtain any additional licenses necessary to [his] duties as CEO, as mutually agreed." (Ex. A to Defs.' Am. Counterclaims, ECF No. 54-1.) On December 21, 2012, in an email captioned "Re: Docs," Simons contacted Ditto's General Counsel, Stu Cohn ("Cohn"), with a few questions regarding the final paperwork for his hiring. Five lines into his response, Cohn noted as an "fyi" that Simons' Series 8 license would not supplant a Series 24 license. Cohn stated, "We will order the review materials and ask that you obtain that license sometime in Q1 of next year." (Ex. B to

Defs.' Am. Counterclaims, ECF No. 54-1.) Simons responded, "ok thanks – can we still transfer/activate the 8 in the interim?" (*Id.*)

As an initial matter, the Court notes that the December 18, 2012 Employment Agreement itself did not obligate Simons to obtain a Series 24 license. As this Court previously stated, when parties make a contract provision "subject to" a later agreement, neither party is bound. (*See,* ECF No. 37, at 11.) Defendants' amended breach of contract claim therefore hinges on whether the subsequent email exchange obligated Simons to obtain a Series 24 license.

"Under Illinois law, a contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules . . . to ascertain what the parties have agreed to do." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 850 (7th Cir. 2007) (citation, internal quotations, and emphasis omitted). It is not clear from Cohn's "fyi" that Simons was required to obtain a Series 24 as a condition of his employment with Ditto. Cohn states that Ditto "will" order review materials and ask Simons to get the license sometime in the coming months. Simons' response ends with an unanswered question. These statements do not evidence a valid and enforceable agreement under which Simons is required to take the

Series 24 exam. Because the e-mails fail to show that Simons was bound to obtain a Series 24 license, Count II is also dismissed.

### *3. Count IV – Defamation*

In Count IV, Defendants point to various statements that allegedly defamed Fox. (*See,* Defs.' Am. Counterclaims, ECF No. 54, ¶ 80.) The statements concern: (1) a spreadsheet of Fox's alleged expenses that Simons created (*id.* ¶ 25); (2) the Board Demand Letter (*id.* ¶ 27); (3) the Huey-Burns Email (*id.* ¶¶ 29–32); (4) the Shareholder Letter (*id.* ¶¶ 35–36); (5) allegations about Fox and Ditto that Simons made to the Professional Golfers' Association ("PGA") (*id.* ¶37); and (6) state court documents that Simons sent to an investment banking firm (*id.* ¶¶ 40–42). To state a claim for defamation under Illinois law, a plaintiff must allege that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that the publication caused damages. *Green v. Rogers,* 917 N.E.2d 450, 459 (Ill. 2009).

The Court examines the spreadsheet and state court papers together, because the spreadsheet was sent to the investment banking firm as an exhibit to the court papers. Defendants argue that Simons employed false labels on the spreadsheet, for instance, asserting that one category of expenses constituted false payments to Fox's brother, when it in fact reflected

"routine, periodic SIPC (Securities Investor Protection Corporation) premium payments." (Defs.' Am. Counterclaims, ECF No. 54, ¶ 25.) Defendants argue that the disclosure of this spreadsheet caused Fox to suffer damages including humiliation, emotional distress, and mental anguish, among other things. The Court finds these allegations sufficient to state a claim for defamation.

Next, the Court considers Simons' statements to the PGA. Defendants allege that Simons informed the PGA that Ditto and Fox were using the PGA's likeness illegally and misrepresenting their relationship with the PGA to others. Defendants state that Simons made these statements knowing they were false, and that Fox suffered damages as a result. Despite Simons' arguments that the original counterclaims only concerned statements to the PGA about Ditto — not Fox — the allegations, as pleaded in the Amended Counterclaims, are sufficient to state a claim for defamation.

The Court has already addressed the substance of the Board Demand Letter, Huey-Burns Email, and Shareholder Letter and concluded that these documents do not evidence the knowing disclosure of false information. These documents show that certain transactions (which Defendants uphold as "legitimate business expenses") looked suspicious to Simons, who requested that the board investigate them. In the Board Demand Letter and Shareholder Letter, Simons explicitly states that he is not

- 12 -

alleging conclusive wrongdoing, and that he has not yet reached any conclusions about the transactions. Just as these documents fail to provide a basis for Defendants' breach of fiduciary duty claim, they also fail to provide a basis for Defendants' defamation claim.

Accordingly, Defendants' defamation claim is allowed to proceed with respect to Simons' alleged statements to the PGA and disclosures to the investment banking firm.

### B. Motion to Strike

Plaintiff seeks to strike three portions of Defendants' Amended Counterclaims pursuant to Rule 12(f). Under Rule 12(f), the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Allegations are immaterial when they have no essential relationship to the claim and impertinent if they are not responsive or irrelevant. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.,* No. 01–C–8591, 2005 WL 843297 at *13 (N.D. Ill. Jan 20, 2005) *aff'd,* 541 F.3d 719 (7th Cir. 2008). Allegations are scandalous if they "bear[] no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992). Although motions to strike are often disfavored because they tend to "disserve the interest of judicial economy," *Redwood v. Dobson,* 476 F.3d 462, 471 (7th Cir.

2007), whether to strike material rests within the sound discretion of the district court. *Talbot,* 961 F.2d at 665.

Simons seeks to strike the entirety of paragraph 17, in which Defendants allege that Simons became "extraordinarily close" to Mann, "ingratiated himself with Mann" by allowing him use of his vacation home, and "engaged in graphic homoerotic banter with Mann" in messages sent through Ditto's e-mail servers. (Defs.' Am. Counterclaims, ECF No. 54, ¶ 17). Simons also seeks to strike a portion of paragraph 18 stating that a personal relationship "blossomed" between Simons and Mann, and a portion of paragraph 44 that refers to the relationship as inappropriate. Simons argues that these allegations have nothing to do with the alleged conduct that forms the basis of Defendants' counterclaims. Defendants counter Simons and Mann's use of corporate e-mail servers to exchange personal messages is "highly relevant to Simons' breach of his fiduciary duties and breach of contract" and that "Fox is entitled to show that Simons and Mann did not arrive at their accusations against Fox through the exercise of independent, good faith judgment." (Defs.' Opp., ECF No. 69, at 3, 9.)

The allegations about Simons and Mann's personal relationship are immaterial Defendants' counterclaims — both those that remain and those that the Court dismisses. The remaining counterclaims for tortious interference with prospective economic advantage (Count III) and defamation (Count IV) deal with Simons' conduct

exclusively. Whether he was engaged in an inappropriate relationship with Mann or anyone else has no nexus to these claims. The Court also questions how the personal relationship between Simons and Mann was "highly relevant" to the two dismissed claims. Defendants' breach of contract claim was premised on Simons' failure to obtain a professional license, while the breach of fiduciary duty claim dealt with Simons' communications to shareholders, the board, and the SEC. Because none of the Amended Counterclaims are about Mann, or Simons' relationship with Mann, the Court grants Simons' Motion to Strike.

### III. CONCLUSION

For the reasons stated herein, Simons' Motion to Dismiss Defendants' Amended Counterclaims is granted in part and denied in part, and Simons' Motion to Strike is granted.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 4/28/2015