IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

**PAUL SIMONS,**

                Plaintiff,        Case No. 14 C 309

       v.                     Judge Harry D. Leinenweber

**JOSEPH FOX,**

                Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Simons brought two separate Motions for Sanctions [ECF Nos. 128 and 130] against Defendant Joseph Fox for allegedly hampering discovery and violating an order of this Court. The Motions also contain various other requests, including entry of a protective order and a discovery extension. For the reasons state herein, the Court grants in part and denies in part the pending Motions.

## I. BACKGROUND

This case has a long and tangled procedural history. Plaintiff Paul Simons ("Simons") was the CEO of a now-defunct company, Ditto Holdings ("Ditto"), which was founded by Defendant Joseph Fox ("Fox"). Fox recruited Simons as CEO of Ditto, but their relationship quickly soured after Simons complained to Ditto's Board of Directors and the Securities and Exchange Commission about financial irregularities and potential

violations of the securities laws at Ditto. Simons was promptly fired, and he subsequently filed this suit in January 2014, alleging retaliation, breach of contract, and defamation. Fox currently has a single counterclaim against Simons for defamation.

The Court assumes a basic familiarity with the further history of the case based on its discussion of the facts in prior opinions. What follows is a brief outline of recent developments and context for the discovery disputes at issue. The parties have been engaged in fact discovery since January 2015. The Court has delayed the close of discovery repeatedly, due to ceaseless bickering between the parties. The first dispute relevant to this Motion arose in April 2015, when Simons filed a motion to compel responses to certain document requests and interrogatories. The Court granted Simons' motion and ordered Fox (and Ditto, which at the time was a corporate Defendant) to produce the requested evidence by May 5, 2015.

The May 5th deadline came and went with no word on whether Fox had complied with the Court's order. Then on September 4, Simons filed a second motion to compel for production of essentially the same information he had requested in April. The Court set a hearing for September 19 to decide the second motion to compel; at that hearing, the parties claimed they had worked out most of their issues in the two intervening weeks, mooting

the motion. But the Court continued extending fact discovery due to other delays: originally discovery was set to close in July, then it was pushed back to September, next to October, then to November, and finally to the end of December. Simons claims that Fox still hasn't complied with the Court's order to produce certain documents originally requested in April 2015.

It is well over a year since discovery began, and Fox (the only remaining Defendant) has not submitted to a complete deposition. The parties had noticed depositions for December 2015 and carefully planned a time when all could be present in Chicago. On December 17, Fox was scheduled to be deposed as an agent of former corporate Defendant Ditto, but he prematurely walked out. He was scheduled to return the next day to answer questions in his capacity as an individual Defendant, but he cancelled and left town. The only reason he provides for the cancellation borders on ludicrous: he received a call from the Financial Industry Regulatory Authority ("FINRA"), who told him that he would need to file a "Form BDW" by the end of the following day. The Form BDW, along with "all of his responsibilities connected to the shutting down" of Ditto, led Fox to cancel.

The purpose of Form BDW is to inform the Securities and Exchange Commission (the "SEC") and relevant self-regulatory organizations that an entity is no longer licensed to be a

broker-dealer; in Ditto's case, this was evidently due to a failure to meet minimum capital requirements (unsurprising given the facts attendant to this litigation). The form is two pages long, including instructions, and is primarily fill-in-the-blank. It requests information such as the company's name, address, whether the company is currently under investigation, and whether the company owes any outstanding payments to customers. In other words, as FINRA and SEC forms go, Form BDW is exceedingly simple. Why it would necessitate the cancellation of a carefully planned deposition, during an already-protracted discovery process, is a complete mystery. And Fox makes no attempt to flesh out the "other responsibilities" related to the winding up of Ditto that urgently required him to leave.

At the time Fox bolted from Chicago on December 17, the Court's order set the close of fact discovery for December 31 (this after several extensions). Fox likely knew that the chance of his returning to be deposed prior to the Court's deadline was slim. He makes much of his availability to be deposed by telephone on December 30 and 31, but that's hardly ideal. It should be no surprise that Simons disfavored the telephonic option, especially after Fox disrupted the parties' agreed schedule for no legitimate reason.

Simons, by contrast, did sit for a full deposition, on December 16. The content of that deposition relates to the next basis for sanctions. The Court entered an agreed confidentiality order in this case in April 2015, pursuant to its authority under Federal Rule of Civil Procedure 26(c) [ECF No. 90]. The Order requires all deposition testimony taken in the case to remain confidential for a set period of time, and restricts the use of confidential information for any purpose outside of the litigation. It explicitly restricts the disclosure of such confidential information to third parties. For months, Simons contends that Fox has been sending communications that smear Simons and other related parties to Ditto's former shareholders. Simons attaches several of these communications to his Motion for Sanctions. The exhibits contain inflammatory statements, many of which draw from documents and testimony obtained through discovery.

Two days after Simons' deposition, Fox sent Ditto shareholders an email that purported to quote portions of the deposition based on his notes. Fox included commentary interspersed with the quotations, attacking Simons. This was a violation of the terms of the Court's confidentiality order, which required such information to stay confidential for a period of 14 days after the deposition. Remarkably, Fox

prepared his diatribe to shareholders on December 18, the same day he failed to appear for his own scheduled deposition.

Fast forward to a hearing before this Court on January 12, 2016: Simons already had filed the Motions for Sanctions, and his counsel expressed concern over Fox's improper use of Simons' deposition testimony and fear that Fox would continue to violate the Court's standing confidentiality order. The Court admonished Fox's counsel about compliance with the order, and counsel admitted to the violation, apologized, and stated that he had since reviewed the terms of the order with his client. For unrelated reasons, Fox's counsel sought to withdraw his representation, and asked the Court to hold the proceedings in abeyance for 30 days while Fox sought new counsel. Simons, meanwhile, requested an additional protective order that would prevent Fox from using information gained in the course of discovery for public communications with shareholders. The requested protective order was significantly broader than the existing confidentiality order entered in April.

The Court granted a stay in the case for 30 days, contingent on Fox's promise not to communicate further discovery information with shareholders during that period. This precise exchange took place: "THE COURT: I'll grant the motion for the extension of time if [Fox] promises not to violate the protective order. FOX'S COUNSEL: He has so promised already,

your Honor." (Hr'g Tr. at 6.) The Court's minute order published after this hearing reads:

> Motion hearing held on 1/12/2016. Mark A. Stang's motion to withdraw as attorney . . . is granted. The Court also grants Stang's request to hold all matters in this action in abeyance for 30 days. *Defendants agree that they will not violate the protective order prohibiting the use of discovery materials for improper purposes.* Status is set for 02/11/16.

[ECF No. 143] (emphasis added).

Again, the Court intended this grant to extend for at least 30 days, making it broader than the April confidentiality order's 14-day waiting period.

Despite the order, on January 21, 2016, Fox sent another email to shareholders. One highlight: "Simons had a hissy fit that I did not wait the apparent 14-day waiting period after receipt of the transcript from his deposition to share it publicly." Fox went on to criticize various portions of Simons' deposition, for at least the second time.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 37 provides for sanctions against a party who obstructs discovery. Rule 37(b) authorizes the Court to impose sanctions for failing to comply with a court order; Rule 37(d) similarly allows for sanctions when a party fails to appear for a properly noticed deposition. *See, generally, Halas v. Consumer Services,* 16 F.3d 161, 164-65 (7th Cir. 1994) (discussing application of the rules). These rules

- 7 -

contain fee-shifting provisions allowing the Court to award the moving party attorneys' fees unless the non-moving party's violation was substantially justified. *See,* FED. R. CIV. P. 37(b)(2)(C); 37(d)(3). Finally, Rule 27(c) empowers the Court to impose an order "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense."

### III. ANALYSIS

The Court first turns to the issue of the confidentiality order. Fox admitted through counsel to violating it by flouting the 14-day waiting period on public discussion of deposition testimony. The purpose of that waiting period is to give both parties time to designate a particular portion of the deposition as confidential. Without it, a party might rush to disclose the content of testimony before the opposing party has an opportunity to ascertain which statements were sufficiently sensitive to merit confidential treatment. Simons requests sanctions under Rule 37(b), partly for Fox's violation of the 14-day period. But to the Court's knowledge, Simons never sought to designate any portion of his deposition confidential. That suggests that he is merely annoyed by Fox's rants to shareholders, rather than compromised by disclosure of sensitive information.

The Court temporarily entered a broader protective order – separate from the confidentiality order – on January 12, 2016,

to halt Fox's statements while it determined what to do about the pending discovery motions. The Court was concerned that Fox would continue flagrantly violating the confidentiality order and that Simons would be irreparably harmed as a result. But Simons still has not pointed to disclosure of any sensitive information. What Simons requests under Rule 26(c) is a total gag order on Fox, preventing him from publicly discussing any information obtained through discovery. While the Court agrees that many of Fox's communications with shareholders seem gratuitous, reckless and inflammatory, Simons has pointed to no actual harm suffered as a result of these communications other than his own exasperation. And while Rule 26(c) does empower the Court to protect a party from annoyance and embarrassment, the Court must also balance that against Fox's First Amendment right to free speech.

If Simons' only harm so far is annoyance, he must show that it is *particularly serious* to justify a protective order under Rule 26(c). *See, Cipollone v. Liggett Group,* 785 F.2d 1108, 1121 (3d Cir. 1986). He has not carried that burden. Moreover, the Seventh Circuit has cautioned against blanket protective orders, especially in cases that do not involve sensitive information such as company trade secrets. *See, e.g., Citizens First Nat. Bank v. Cincinnati Ins.,* 178 F.3d 943, 944-46 (7th Cir. 1999); *Jepson, Inc. v. Makita Elec. Works,* 30 F.3d 854,

858-860 (7th Cir. 1994). The Court thus declines to extend the protective order and rescinds it to the extent it was granted by the minute order dated January 12, 2016.

The fact remains that Fox violated a Court order, regardless of the question of harm to Simons. Recall that the confidentiality order is distinct from the temporary protective order. And to be clear, the confidentiality order [ECF No. 90] from April 19 stands. The Court entered that agreed order for good cause; it is limited to pretrial discovery, and the 14-day waiting period for discussion of deposition testimony serves an important purpose. Fox is hereby advised that he must abide by the confidentiality order in its entirety going forward. The Court will presume any future violations are deliberate and will not hesitate to impose sanctions under Rule 37(b).

Most troubling to the Court are the numerous obstructions to completing discovery. After several extensions, the Court's patience has worn thin. In December 2015, all parties were finally present in Chicago; Simons sat for a 7-hour deposition, and the next day, Fox walked out of his. The cancellation was without any legitimate reason. Fox did himself no favors in his argument against the present Motions. His response brief, heavily laced with sarcasm, lacks any credible explanation of the exigency of filing the Form BDW. If the matter was truly urgent, which is doubtful, Fox could have delegated the task or

worked remotely.  As the Court has already pointed out, the form is relatively simple, and the day it was due, Fox was busy typing an email to Ditto shareholders that violated a court order.  The conduct merits sanctions under Rule 37(d)(1)(A). *See, Halas v. Consumer Services,* 16 F.3d 161, 164-65 (7th Cir. 1994) (affirming sanctions for unexplained failure to attend a properly noticed deposition under Rules 37(d) and 37(b)).

The Court hereby sanctions Fox pursuant to Rule 37(d).  Fox is ordered to pay Simons' reasonable fees and costs, including attorney's fees, to compensate Simons for bringing the Motions for Sanctions and for the efforts necessary to reschedule the canceled depositions.  Simons should submit a fee petition to the Court within 14 days of entry of this order pursuant to Rule 54(d).  The Court orders Fox to appear for his deposition in person as soon as his schedule reasonably permits. Additionally, Fox is ordered to comply fully with the Court's orders to produce documents referenced in minute orders dated April 21, 2015, [ECF No. 94], and September 17, 2015, [ECF No. 121].  Failure to do so in a timely fashion may be grounds for additional sanctions.

The Court turns briefly to Simons' remaining allegations of discovery violations.  Simons argues that Fox failed to preserve or timely produce certain relevant text messages and emails. The Court reserves ruling on these matters.  It will consider

arguments relating to failure to preserve on a later motion, and may entertain an adverse inference instruction to the jury at trial, if appropriate.

This case has dragged on long enough, especially for a relatively straightforward employment dispute. The Court will not tolerate any future dilatory tactics, from either party. In order to tie up the remaining deposition and any other loose ends, the Court extends the fact discovery deadline to June 30, 2016. The Court warns Fox in particular that it will not tolerate further obstructionism on his part, whether relating to his deposition or any other discovery matter.

### IV. CONCLUSION

Plaintiffs' Motions for Sanctions, a Protective Order, and Discovery Extension [ECF Nos. 128 and 130] are granted in part and denied in part, consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

　
Harry D. Leinenweber, Judge
United States District Court

Dated:5/2/2016