IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL SIMONS, an Individual, )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>v. )<br>)<br>DITTO TRADE, INC., an Illinois )<br>Corporation, DITTO HOLDINGS, INC., a )<br>Delaware Corporation, and JOSEPH FOX, an )<br>Individual, )<br>)<br>Defendant/Counter-Plaintiffs. )<br>) | No. 14 CV 309<br><br>Hon. Harry D. Leinenweber |

### PLAINTIFF'S MOTION FOR
### ATTORNEYS' FEES AND EXPENSES
### AGAINST JOSEPH FOX

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and this Court's Memorandum Opinion and Order dated May 2, 2016 ("Sanctions Order," Dkt. # 168), plaintiff Paul Simons submits this motion for attorneys' fees and expenses against defendant Joseph Fox in the amount of $91,590.50. In support of his motion, Simons states as follows:

1. In its Sanctions Order, the Court granted in part Simons' two December 30, 2015 motions for sanctions. (Dkt. # 168 at 12.) In doing so, the Court ordered Fox "to pay Simons' reasonable fees and costs, including attorney's fees, to compensate Simons for bringing the Motions for Sanctions and for the efforts necessary to reschedule the canceled depositions." (*Id.* at 11.) The Court directed that "Simons should submit a fee petition to the Court within 14 days of entry of this order pursuant to Rule 54(d)." (*Id.*) As set forth herein, Simons' recoverable fees and costs are $91,590.50. For the reasons set forth herein, Simons requests that the Court order Fox to pay this amount within 21 days of the date of its order awarding fees and costs.

**A.      The Court Should Award Simons' Fees and Costs in the Amount of $91,590.50.**

2.      Locke Lord LLP ("Locke Lord") represented and continues to represent Simons in connection with his motions for sanctions, the depositions of Joseph Fox, Ditto Trade, Inc., and Ditto Holdings, Inc., and the ongoing rescheduling of those depositions after Fox improperly walked out of the deposition of the Ditto entities and cancelled his own deposition.

3.      Locke Lord has billed (and will bill) Simons on an hourly basis for work related to bringing the motions for sanctions and rescheduling the canceled depositions. The rates charged by the Locke Lord attorneys who devoted substantial time to this Matter were for much of the work substantially discounted from the firm's usual and customary rates and are reasonable and consistent with rates charged by attorneys in Cook County with comparable skill and experience. (Ex. A, Declaration of W. Allen Woolley in Support of Plaintiff's Fee Petition ("Woolley Decl."), ¶¶ 3-6.) The Court previously awarded fees to Simons against the Ditto entities based on the same or similar rates, finding that the Locke Lord fees that Simons sought to recover were reasonable. (Dkt. # 164.)

4.      The fees included in this motion are reasonable based on the complexity and level of effort required to bring the motions for sanctions and reschedule the improperly canceled depositions in the face of Fox's continued refusal to comply with his discovery obligations.

5.      Because of Fox's and Ditto's discovery abuses and violations of Court orders, Simons was forced to file two motions, addressing Defendants' failure to produce documents, the cancelled depositions, and the violations of this Court's Agreed Confidentiality Order. (Dkt. ## 129, 132.) Simons' counsel devoted considerable time and effort to researching and drafting these motions, which were intended to counteract months of Fox's and Ditto's delay tactics and evasion of their discovery obligations. These motions involved significant legal research, as well as an extensive review of Court records, correspondence, discovery requests and responses, and

document productions over the prior 12 months in order to reconstruct and summarize for the Court the discovery process, prior motions for sanctions, and the discovery delay and abuses that necessitated the motions.

6. Simons' counsel has been (and will be) forced to undertake a number of tasks directly related to bringing the motions for sanctions. These efforts include the following:

    a. reacting in December 2015 to Fox and Ditto canceling the depositions, including correspondence and other communications related to rescheduling;

    b. preparing and filing a 15-page Motion (I) for a Protective Order to Prevent Abuse of Discovery, and (II) to Impose Sanctions on Defendants for Deliberately Violating the Agreed Confidentiality Order (Dkt. # 129), including 19 exhibits, supported by extensive legal research and a comprehensive review of the record;

    c. preparing and filing a Motion for Limited Extension of Discovery, Sanctions Against Defendants for Failing to Appear at Their Depositions and Failing to Produce Documents (Dkt. # 132), and supporting 15-page Memorandum (Dkt. # 133), again supported by extensive legal research and a comprehensive review of the record;

    d. rescheduling and participating in hearings on the sanctions motions;

    e. preparing and filing a Supplement to both motions for sanctions (Dkt. # 145), identifying Fox's further violations of the Protective Order; and

    f. preparing and filing a 15-page reply brief in support of both motions for sanctions (Dkt. # 162).

7. In total, Simons has already incurred $74,434.50 in attorneys' fees and costs related to bringing the sanctions motions and rescheduling the improperly canceled depositions. (Woolley Decl. ¶ 7-8, 11.)

8. In addition, rescheduling the Fox deposition and the remainder of the Ditto deposition (if needed) will require additional administrative time and some time to re-prepare for the depositions, which Simons' counsel originally prepared to take 5 months ago, in December 2015. Simons' counsel anticipates that this additional administrative effort and preparation—which would not have been necessary if Fox had not cancelled the depositions—will take at least eight hours of attorney time (and potentially much more), causing Simons to incur *at least* $5,000 in anticipated fees. (Woolley Decl. ¶ 12.)

9. Simons' counsel has also expended effort in reviewing time records and preparing this motion for fees and costs and the accompanying supporting documents. At the time of this writing, the fees related to these efforts have totaled $12,156.00, not counting the time that will be required to finalize and file this motion and to reply to any response that may be filed by Fox. Simons is entitled to recover these fees as well. *See Northwestern Nat'l Life Ins. Co. of Milwaukee, Wis. v. Lutz.*, 933 F. Supp. 730, 732 (C.D. Ill. 1996) (citing *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980)) ("Typically, parties may recover the cost of seeking attorneys' fees as part of their request for attorneys' fees").

10. Finally, Simons incurred a $165.00 charge from the court reporting service due to Fox's failure to appear for his deposition. (Woolley Decl. ¶ 8.)

11. Based on the foregoing, Simons requests that the Court order that Joseph Fox pay to Simons attorneys' fees and costs already incurred in the amount of $74,434.50 in connection

4

with bringing the sanctions motions and rescheduling the canceled depositions, plus $12,156.00 for preparing this motion and $5,000 in anticipated attorneys' fees.

### B. The Court Should Require Fox to Pay the Sanctions Award within 21 Days of Its Ruling on this Motion.

12. A court may order payment of sanctions prior to final judgment. *See, e.g., Marcum v. Graphic Packaging Int'l, Inc.*, 2013 WL 6388650, *3 (N.D. Ind. Dec. 6, 2013) (ordering payment of sanctions within 30 days of the order); *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, *10 (N.D. Ill. May 13, 2002) (ordering payment of sanctions within 21 days of the order); *Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 WL 290308, *23 (N.D. Ill. Mar. 20, 2001) (recommending that sanctions be paid within 10 days of District Judge's adoption of report and recommendation). Rather than waiting to include this total in a final judgment against Fox, the Court should order that Fox must pay the fees and costs to Simons within 21 days of entry of the order granting this motion.

13. Simons has well-founded concerns that if the Court's sanctions award is simply included in the final judgment, Fox will never make the required payment and the sanctions will not serve either to deter further abuses by Fox or to compensate Simons for attorneys' fees and costs he was forced to incur because of Fox's misconduct.

14. Fox's obstructionist approach to discovery is well-documented. Simons began requesting defendants' documents and seeking responses to interrogatories in December 2014. At every juncture, Simons' efforts to obtain discovery were met by incomplete responses, delay, and general stonewalling. Simons' counsel was forced to participate in numerous discovery conferences (some lasting multiple hours), write many full-length discovery letters and countless emails, and ultimately file two extensive motions to compel. (Dkt. ## 105, 118.) As

demonstrated in Simons' motions for sanctions, even after the motions to compel, defendants did not complete their document production.

15. Fox took a similar approach to depositions. After months of delays, depositions of Fox and the Ditto entities were scheduled for December 2015. But just as the depositions Simons had scheduled and prepared for had begun, Fox walked out of the Ditto Entities' deposition with several hours of testimony remaining and then cancelled the depositions of Fox and two other officers of the Ditto Entities.

16. This Court unambiguously condemned Fox's "numerous obstructions to completing discovery," including canceling his deposition "without any legitimate reason." (Dkt. # 168 at 10.) The Court also reproached Fox for "sending an email to Ditto shareholders that violated a court order." (*Id.* at 11.)

17. Fox's conduct left Simons with no reasonable choice but to bring his two motions. Like his two prior motions to compel, Simons did not undertake the effort and expense that went into these motions lightly. Instead, Simons was forced to file them because Fox's ongoing and repeated discovery abuses had put Simons in a position where he would be severely disadvantaged in the litigation. Because of Fox's conduct (individually and as Ditto's principal), Simons was not able to complete *any* depositions prior to the discovery cutoff; and Simons did not obtain numerous documents properly requested through discovery (and compelled by the Court) many months earlier, including a number of documents absolutely central to his case and defense.

18. Fox's dilatory discovery tactics—along with three years of amended counterclaims, "abstention" motions, two changes of attorneys, and numerous discovery extensions—reveal his desire to prolong this litigation. Allowing Fox to delay payment of these

sanctions until after entry of a final judgment would provide further incentive for him to delay these proceedings.

19. Moreover, if Fox is permitted to delay payment of these sanctions to the end of the case, there is a very good chance they will never be paid. Fox is exposed to liability in other civil suits. *See, e.g., Wetterson v. Fox*, Case No. 15-cv-08516 (N.D. Ill.). He has been ordered barred from the securities industry for 5 years and required to pay $205,636 by the SEC for "willfully violat[ing] Sections 5(a) and 5(c) of the Securities Act." (Ex. B, SEC April 25, 2016 Initial Decision at 7; Ex. C, SEC Sep. 8, 2015 Order Instituting Administrative and Cease-and-Desist Proceedings at 5.) Fox sent an email to Ditto shareholders indicating that he may "be forced to file for personal bankruptcy." (Ex. D, December 10, 2015 email from Fox to Ditto shareholders.) Fox's prior counsel has represented that Fox is "broke and judgment-proof. . . . Mr. Simons would never be able to enforce any judgment against Mr. Fox." (Ex. E, December 19, 2016 email from Fox's counsel to Simons' counsel.) This same former counsel now claims that Fox owes him nearly $40,000 and has filed an attorney's lien. (Ex. F, Notice of Attorney's Lien.)

20. Rather than focusing on paying off the amounts he owes, Fox remains bent on pursuing relentless legal action to punish those he perceives to have wronged him. Not only does Fox persist in prosecuting a (meritless) defamation action in this case, he recently filed an 88-page lawsuit in state court (with voluminous exhibits) against Simons and 4 other defendants—including former Ditto employees Jeremy Mann and Adam Stillman—on April 22, 2016. (Ex. G, Complaint.) Fox's new state court complaint seeks damages for "malicious prosecution," "abuse of process," "civil conspiracy" and "intentional infliction of emotional distress" based on the same September 2013 communications with the SEC that this Court twice

held were not actionable in this case. (*Id.*) Simons believes these new claims are not just meritless, but also largely time-barred and improperly asserted in state court because they were compulsory counterclaims in this case. But while the new case may lack merit, Simons believes there is a good possibility Fox will spend his last dollar pursuing his promised vendetta against Simons, Mann, Stillman and others. (*See* Ex. H, threatening and harassing emails from Fox to Stillman; Ex. I, Mann Dep. Transcript at 350-53, Ex. 1.[1])

21. Delaying Simons' recovery of fees and costs to the end of the case (while Fox spends money pursuing other litigation and driving Simons' legal costs still higher) could effectively keep Fox from ever having to pay his sanctions, leaving Simons with the bill for two motions brought to rectify discovery abuses and violations this Court found to be sanctionable, egregious behavior by Fox. This wholly unjust result would do nothing to deter Fox's conduct, while Simons would suffer affirmative harm from having brought the motions. Indeed, all Simons will gain from his motions for sanctions—if Fox pays the sanctions—is the actual cost of the legal work done in preparing the motions and rescheduling the canceled depositions. If Fox does not repay this amount, Simons will have suffered a significant *loss* by bringing those motions attempting to redress what the Court found to be misconduct by Fox.

22. An order that would allow Fox to put off payment until after final judgment would drastically increase this risk, because there is a very good chance that Fox will have made himself judgment-proof before the end of this litigation—possibly by spending money that could have gone to pay the sanctions on further litigation. This would leave Simons standing in line with Fox's other creditors, unlikely to collect any of the money he was forced to spend to address

---

[1] As reflected in Mann's notes and deposition transcript, Fox said the following about Simons during a meeting with Mann: "I am gonna take that mother fucker down. I am going to crush him. Do you think I'm a pussy? I've never been a pussy in my life. . . . We may have a house in purchase NY, in Park City, and hell, even Martha's Vineyard. I'm gonna take this mother fucker for everything he's got."

Fox's discovery abuses, while also now having to spend more money to defend the remainder of Fox's counterclaims here and the new state court lawsuit based on the same conduct that was the basis for counterclaims this Court dismissed. In short, the sanctions levied by this Court will be meaningless unless Fox is ordered to pay them *before* proceeding with the remainder of this litigation.

23. Pursuant to Federal Rules of Civil Procedure 54(d)(2)(C) and 52(a), Simons further requests that the Court make appropriate findings of fact and conclusions of law in connection with this award of fees and costs. A proposed order, including findings of fact and conclusions of law, is attached as Exhibit J and is being lodged in electronic form.

## CONCLUSION

For the foregoing reasons, Plaintiff Paul Simons respectfully requests that this Court (i) grant this motion and order Joseph Fox to pay to Simons a total of $91,590.50 in fees and expenses within 21 days of the order granting this motion; (ii) make any appropriate findings of fact and conclusions of law pursuant to Federal Rules of Civil Procedure 54(d)(2)(C) and 52(a); (iii) grant such additional relief as the Court deems just and proper.

Dated: May 13, 2016

Respectfully Submitted,

/s/ *David T. Van Der Laan*
W. Allen Woolley
awoolley@edwardswildman.com
Bilal Zaheer
bzaheer@edwardswildman.com
David T. Van Der Laan
dave.vanderlaan@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0700
Fax: (312) 443-0336
*Attorneys for Paul Simons*

9

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that on May 13, 2016 a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system, and was thereby served by e-mail notification upon all parties of record.

                                                                                /s/ *David T. Van Der Laan*